```
 1              UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT
 2

 3   _____ )
     UNITED STATES OF AMERICA,       ) No. 3:19-cr-00314-SRU-2
 4                                   )
                      Plaintiff,     ) November 19, 2021
 5   v.                              )
                                     ) 1:26 p.m.
 6   KHATIJA KHAN,                   )
                                     ) 915 Lafayette Boulevard
 7                 Defendant.        ) Bridgeport, Connecticut
     _____ )
 8

 9                 CHANGE OF PLEA HEARING

10   B E F O R E:

11          THE HONORABLE STEFAN R. UNDERHILL, U.S.D.J.

12

     A P P E A R A N C E S:
13

14   FOR THE GOVERNMENT:

         OFFICE OF THE UNITED STATES ATTORNEY
15           1000 Lafayette Boulevard, 10th Floor
             Bridgeport, CT 06604
16           (203) 696-3000
             E-mail: harold.chen@usdoj.gov
17       BY:  HAROLD H. CHEN, AUSA

18

19   FOR THE DEFENDANT:

         OFFICE OF THE FEDERAL DEFENDER
20           265 Church Street, Suite 702
             New Haven, CT 06510
21           (203) 498-4200
             E-mail: carly_levenson@fd.org
22       BY:  CARLY LEVENSON, ESQ.
             ASHLEY MESKILL, ESQ.
23

24              Official Court Reporter:
                Melissa J. Cianciullo, RDR, CRR, CRC
25              (203) 606-1794
```

```
 1                    (Call to order, 1:26 p.m.)
 2            THE COURT:  Good afternoon.  We're here in
 3   the matter of United States v. Khatija Khan.
 4            Could I have appearances for the record,
 5   please.
 6            MR. CHEN:  AUSA Hal Chen for the United
 7   States.  I am joined here at counsel table with
 8   Special Agent Joel Barry of Homeland Security
 9   Investigations.  Good afternoon, your Honor.
10            THE COURT:  Good afternoon.  Thank you.
11            MS. LEVENSON:  Good afternoon, your Honor.
12   Carly Levenson from the federal defender's office on
13   behalf of Khatija Khan.  With me at counsel table are
14   Ms. Khan and also Ashley Meskill from my office.
15            THE COURT:  Very good.  Thank you.
16            And we're here, as I understand it, for a
17   change of plea.
18            MS. LEVENSON:  Yes, your Honor.
19            THE COURT:  Very good.  Ms. Khan, the first
20   thing I want to do -- feel free to be seated, if you
21   prefer.
22            THE DEFENDANT:  Thank you.
23            THE COURT:  Ms. Khan, the first thing I want
24   to do is tell you I'm in no hurry today.  If you
25   decide to plead guilty, you're going to be giving up
```

1  some important constitutional rights and accepting

2  certain other significant consequences.  I want to

3  make sure you understand each of those rights before

4  you decide whether to waive them and each of those

5  consequences before you decide whether to accept

6  them.  So if at any time I or anyone else says

7  anything that causes you either confusion or concern,

8  just let me know and we'll address that.  Okay?

9          THE DEFENDANT:  Okay.

10          THE COURT:  Very good.  Now, let me start by

11  advising you of certain rights you have today and

12  always.

13          The first is the right to remain silent.

14  That means you don't have to say anything at all in

15  court today.  You don't have to answer my questions.

16  You don't have to make a statement of any kind.  If

17  you start speaking, you can stop whenever you want

18  to, and you can speak with counsel before you say

19  anything in court.  Do you understand?

20          THE DEFENDANT:  I do.

21          THE COURT:  Whatever you do say will be taken

22  down for the record by my court reporter and could be

23  used against you in this or some other case.  Do you

24  understand that?

25          THE DEFENDANT:  I do.

1          THE COURT:  All right.  You have the right to

2   counsel and to have counsel appointed for you at no

3   cost if you cannot afford counsel.  Do you

4   understand?

5          THE DEFENDANT:  I do.

6          THE COURT:  All right.  And that right to

7   counsel applies at every stage of your case.  There

8   is also something called the attorney-client

9   privilege which means that your private

10  communications with your lawyers will remain private,

11  so you can feel very comfortable speaking privately

12  with them and telling them whatever they need to know

13  to best represent you.  All right?  All right.

14          Before we can proceed further with change of

15  plea, I have to ask you some questions and receive

16  answers under oath.  That means waiving your right to

17  remain silent to that extent.  Are you prepared to do

18  that?

19          THE DEFENDANT:  I am.

20          THE COURT:  Very good.  I'd ask that you

21  stand, raise your right hand and be sworn to tell the

22  truth.

23          THE CLERK:  You do solemnly swear that you

24  will answer truthfully any questions which the Court

25  shall propound to you concerning the case now in

```
1    question so help you God?
2            THE DEFENDANT:  I do.
3            THE COURT:  All right.  Ms. Khan, now that
4    you've been sworn, should you make a false statement
5    under oath, you could be prosecuted either for making
6    a false statement or for perjury.  Do you understand
7    that?
8            THE DEFENDANT:  Yes, I do.
9            THE COURT:  What is your full name, please?
10           THE DEFENDANT:  Khatija Sarfraz Khan.
11           THE COURT:  How old are you?
12           THE DEFENDANT:  I'm 40.
13           THE COURT:  How far did you go in school?
14           THE DEFENDANT:  Associate's.  Almost
15   completed bachelor's.
16           THE COURT:  All right.  Are you a U.S.
17   citizen?
18           THE DEFENDANT:  I am.
19           THE COURT:  Are you currently under the care
20   of either a doctor or a psychiatrist?
21           THE DEFENDANT:  I am.
22           THE COURT:  All right.  In connection with
23   that case, are you taking any prescription
24   medications?
25           THE DEFENDANT:  Yes, I am.
```

1          THE COURT:  All right.  Do any of those

2    medications interfere with your clear thinking?  For

3    example, do they make you drowsy?

4          THE DEFENDANT:  No.

5          THE COURT:  Have you had a chance to speak

6    with your counsel, your lawyers, about what we're

7    doing today?

8          THE DEFENDANT:  Yes, I did.

9          THE COURT:  And are you satisfied with their

10   representation of you so far?

11         THE DEFENDANT:  I am.

12         THE COURT:  All right.  Ms. Levenson, in your

13   communications with Ms. Khan, have you developed any

14   concerns whatsoever about her competence?

15         MS. LEVENSON:  No, your Honor.

16         THE COURT:  Very good.  Ms. Khan, have you

17   seen the document called an indictment that has the

18   charges against you?

19         THE DEFENDANT:  Yes, I have.

20         THE COURT:  All right.  And you've read that

21   document?

22         THE DEFENDANT:  Yes, I have.

23         THE COURT:  Have you discussed it with your

24   lawyers?

25         THE DEFENDANT:  I have.

1          THE COURT:  All right.  And we're focusing

2    today on Count One which charges conspiracy to commit

3    mail fraud and Count Two which charges mail fraud.

4    Do you understand the nature of those charges?

5          THE DEFENDANT:  I do.

6          THE COURT:  All right.  Very good.  And do

7    you understand that in the event that you either

8    plead guilty or are found guilty of those charges,

9    you face the following maximum penalties:  up to 20

10   years imprisonment on each of the first two counts, a

11   term of supervised release of three -- up to three

12   years, a fine of up to $250,000 on each count or

13   under the alternate fine provision twice the gross

14   gain or gross loss which has been estimated at

15   $326,212, so that would be two times that number.

16   And there is a $100 mandatory special assessment on

17   each of those two counts.  In addition, you would be

18   ordered to pay restitution in the amount of at least

19   $326,212.

20          Do you understand the potential penalties

21   that you face in the event that you were to plead

22   guilty to Counts One and Two?

23          THE DEFENDANT:  I do.

24          THE COURT:  All right.  Very good.

25          Has the prosecution complied with its

1    obligations under *Brady v. Maryland* to provide

2    information to the defense?

3         MR. CHEN:  The government has, your Honor.

4         THE COURT:  Very good.  Ms. Khan, I now want

5    to review with you various rights you'd be giving up

6    in the event you decide to plead guilty.  I want to

7    start by making sure you understand you're not

8    required to plead guilty even if you committed these

9    crimes.  Do you understand that?

10        THE DEFENDANT:  I do.

11        THE COURT:  So even if you are actually

12   guilty, you still have the right to plead not guilty.

13   If you plead not guilty, then you place on the

14   prosecutor the burden of taking this case to trial

15   and proving to a unanimous jury of twelve persons

16   that you've been proven guilty of the charges beyond

17   a reasonable doubt.  Do you understand?

18        THE DEFENDANT:  Yes.

19        THE COURT:  All right.  And the way you put

20   that burden on the government is simply by saying

21   "not guilty" when you're asked how it is you plead.

22   If you plead not guilty, you're entitled to a speedy

23   public trial before a jury with the assistance of a

24   lawyer in defending against the charges in the

25   indictment.  At trial you would be presumed innocent,

1    and the government would have to overcome that

2    presumption using competent evidence and would be

3    required to prove your guilt to a standard of beyond

4    a reasonable doubt.  You would not be required to

5    prove that you're innocent.  If the government were

6    to fail to prove your guilt beyond a reasonable

7    doubt, the jury would have a legal duty to find you

8    not guilty.

9         During the course of a trial witnesses for

10   the government would come here into open court and

11   would testify under oath and in your presence; and

12   you would have the right to confront those witnesses,

13   which means through your lawyers you could ask them

14   questions either to show that they're not telling the

15   truth or to bring out information that's helpful to

16   your defense.

17        You would have the right to object to

18   evidence offered by the government, and you'd have

19   the right to present evidence of your own in defense

20   of the charges.  Your evidence can include the

21   testimony of witnesses.

22        At trial you'd have the right to testify if

23   you wanted to, but you could not be required to

24   testify.  Just as you have the right to remain silent

25   here today, you'd have the right to remain silent

```
 1    throughout the course of your trial.  What's more, if
 2    you exercise that right and decided you did not want
 3    to testify at trial, I would instruct the jury that
 4    your decision not to testify could not be used as any
 5    evidence of your guilt.  So the jury would not be
 6    permitted to infer that you're guilty or assume that
 7    you're guilty because you decided not to testify at
 8    trial.
 9              Whether or not you yourself testified, you'd
10    have the right to call others as witnesses; and you'd
11    have the right and ability to compel the attendance
12    and testimony of reluctant witnesses by serving them
13    with what's called a subpoena.  A subpoena, quite
14    simply, is a form of court order requiring someone to
15    come to court to give testimony.  So if there is
16    someone out there who knows something about your case
17    and whose testimony might be helpful to your defense
18    but they don't want to come to court or get involved,
19    you may be able to require them to do so by serving
20    them with a subpoena.
21              Do you understand all the rights that I have
22    just described?
23              THE DEFENDANT:  I do.
24              THE COURT:  All right.  And do you understand
25    that this bundle of rights, these are the rights that
```

1    you would enjoy if you were to plead not guilty,

2    persist in that plea and go to trial?

3           THE DEFENDANT:  I do.

4           THE COURT:  All right.  And do you understand

5    that --

6           MS. MESKILL:  I'm sorry, your Honor.

7           THE DEFENDANT:  Yes, I do.

8           THE COURT:  Very good.  Thank you.

9           And do you understand that this bundle of

10   rights would all be waived or given up by a guilty

11   plea today?

12          THE DEFENDANT:  I do.

13          THE COURT:  Do you wish to waive these rights

14   and plead guilty today?

15          THE DEFENDANT:  I do.

16          THE COURT:  If you wish to plead guilty, I'm

17   going to have to ask you questions about what you did

18   because I can't accept a guilty plea unless I'm

19   satisfied that you in fact committed these crimes.

20   So in order to plead guilty today, you're going to

21   have to admit your guilt here in court.

22          If you plead guilty and I accept your plea,

23   you're going to be giving up your constitutional

24   right to a trial and all of the other rights that I

25   just described which come along with a trial.  If you

1   plead guilty, there will be no trial of any kind, and

2   there will be no jury that decides any issue in your

3   case.  And I want to make sure you understand the

4   significance of that.

5        If you plead guilty and then there is an

6   issue of fact, some dispute between you and the

7   prosecutor about a fact that might be pertinent to

8   the decision how to sentence you, then as the

9   sentencing judge, I'll decide that issue of fact

10  rather than a jury.  And it's easier for the

11  government to prove that fact to me than to prove

12  that fact to a jury for three reasons:  one, there is

13  only one of me and there's 12 jurors, all of whom

14  have to agree.  It's easier to prove anything to one

15  person than to 12 people.

16       Second, the rules of evidence don't apply to

17  a judge conducting a sentencing hearing.  So I could

18  listen to testimony or see exhibits that a jury might

19  not be permitted to hear or see under the rules of

20  evidence.

21       And most significantly, at a sentencing

22  hearing, the judge, the sentencing judge decides

23  issues of fact by what we call the preponderance of

24  the evidence.  The preponderance of the evidence just

25  means that I decide which side has the better

1    evidence.  It can be very close and still I would

2    make a decision.  Whereas if a jury were to hear it,

3    it would be beyond a reasonable doubt which is a very

4    difficult standard of proof to meet.

5         Do you understand everything I just said?

6         THE DEFENDANT:  Yes.

7         THE COURT:  Do you understand and accept that

8    if you plead guilty and there are issues of fact that

9    might affect the length of your sentence, that I'll

10   decide those issues without the benefit of a jury,

11   I'll do that without regard to the rules of evidence

12   and I'll use a prepared standard?

13        THE DEFENDANT:  I do.

14        THE COURT:  I also want to make sure you

15   understand that if you plead guilty, that's going to

16   end the question of your guilt or innocence.  So if

17   you receive a sentence that you're not happy with,

18   you're not going to be allowed for that reason to

19   seek to withdraw your guilty plea and ask for a trial

20   at that point.  Do you understand?

21        MS. LEVENSON:  One moment, your Honor.

22        THE COURT:  Please.

23        THE DEFENDANT:  I do.

24        THE COURT:  Okay.  I also want to make sure

25   you understand that a guilty plea waives your right

1    to appeal your conviction.  So -- and let me make

2    sure you understand.  If you were to go to trial and

3    be convicted and then sentenced, you could appeal two

4    things:  You could appeal your conviction, meaning

5    why you were convicted by the jury, so issues that

6    came up at trial; or you could -- and/or you could

7    appeal your sentence, the punishment imposed.  But if

8    you plead guilty, you can't then appeal and say I'm

9    not really guilty.  So you're left only with the

10   right to appeal your sentence.  Do you understand

11   that distinction?

12           THE DEFENDANT:  I do.

13           THE COURT:  And do you understand if you

14   plead guilty, that will waive your right to appeal

15   your conviction?

16           THE DEFENDANT:  I do.

17           THE COURT:  Very good.  All right.  There are

18   some other consequences of pleading guilty that I

19   want to make sure you understand.

20           First off, the charges in Counts One and Two

21   are felony charges, and if you are convicted of those

22   charges; that is, if you plead guilty to those

23   charges, you're going to be giving up some important

24   civil rights that you may enjoy at this time

25   including the right to vote, the right to serve on a

1    jury, the right to hold public office and the right

2    to possess any type of firearm or ammunition.  Do you

3    understand?

4            THE DEFENDANT:  I do.

5            THE COURT:  Every person convicted of a

6    felony in federal court is required to provide a DNA

7    sample that will be analyzed and used by law

8    enforcement officers for law enforcement purposes.

9    Do you understand that?

10           THE DEFENDANT:  I do.

11           THE COURT:  I'll be very frank.  Persons who

12   are convicted of felonies have a very difficult time

13   finding employment.  Many employers openly

14   discriminate against people who have felony

15   convictions, and many state laws here and elsewhere

16   prohibit felons from obtaining licenses necessary to

17   engage in various professions.  Do you understand?

18           THE DEFENDANT:  I do.

19           THE COURT:  All right.  You have told me

20   you're a U.S. citizen and I believe you, but I do

21   need -- I'm required to warn you that in the event

22   that you -- it turns out that you're not a U.S.

23   citizen or if your citizenship is somehow revoked,

24   that there will be significant immigration

25   consequences from a decision to plead guilty today.

1  Do you understand that?

2          THE DEFENDANT:  I do.

3          THE COURT:  And, finally, a guilty plea today

4  could work to your disadvantage if you're ever back

5  in court again.  If you ever want to take the witness

6  stand in any case, civil or criminal, your

7  credibility can be challenged by a lawyer on the

8  simple fact that you have a felony conviction.  Do

9  you understand?

10         THE DEFENDANT:  Yes, I do.

11         THE COURT:  And importantly, if you're ever

12  convicted of another crime in the future, you may

13  receive a longer sentence for that crime either

14  because a mandatory minimum applies to someone

15  previously convicted or because a judge exercising

16  sentencing discretion decides to impose a longer term

17  because of a conviction on your record.  Do you

18  understand?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Do you understand and accept each

21  of these additional consequences of pleading guilty?

22         THE DEFENDANT:  I do.

23         THE COURT:  All right.  I need to talk to you

24  a little bit about how sentencing works in the

25  federal court, and I want to start by making sure you

1    understand that there is no deal or agreement today

2    about what your sentence will be in exchange for a

3    guilty plea.  Do you understand?

4            THE DEFENDANT:  I do.

5            THE COURT:  All right.  And the reason for

6    that is because before I sentence you, I have to

7    consider all the factors that are set forth in a

8    statute called 18 U.S.C. Section 3553(a).  Those

9    factors include your background and characteristics,

10   the nature and circumstance of these offenses, the

11   various purposes of sentencing which include

12   punishment, deterrence, rehabilitation and

13   incapacitation.  I need to consider the sentencing

14   guidelines and the advice they give me about how to

15   sentence you, the need for restitution and so forth.

16           In short, what that statute says is I have to

17   take all the information about -- I have about you

18   and about what you did, good and bad, weigh it and

19   come up with a sentence in your individual case that

20   is fair, just and reasonable and that is sufficient

21   but not greater than necessary to serve the purposes

22   of sentencing.  Do you understand?

23           THE DEFENDANT:  I do.

24           THE COURT:  All right.  Now, one thing I have

25   to consider at sentencing and, therefore, I need to

 1  discuss with you today is what we call the U.S.

 2  sentencing guidelines.

 3         Are you generally familiar with what we mean

 4  by the U.S. sentencing guidelines?

 5         THE DEFENDANT:  I do.

 6         THE COURT:  All right.  Hopefully then you

 7  understand the sentencing guidelines call upon judges

 8  to make two calculations and as a result of those

 9  calculations, to receive advice about how to sentence

10  you.

11         The first calculation is what we call your

12  offense level and it seeks to quantify the

13  seriousness of these two offenses.  So we look at

14  what is the nature of the crime, what is the manner

15  in which it was committed, what was the -- your

16  response, meaning did you go to trial or plead guilty

17  and so forth.

18         So we add and occasionally subtract points to

19  come up with a total offense level that is a proxy

20  for the seriousness of these offenses.  Do you

21  understand?

22         THE DEFENDANT:  I do.

23         THE COURT:  All right.  The second

24  calculation is what we call your criminal history

25  category.  And instead of looking at these crimes, we

```
 1    look at any past convictions that you may have
 2    suffered.  So we ask have you ever been corrected of
 3    anything else in the past?  If so, did you serve any
 4    time?  If so, how long?  When did you get out and so
 5    forth.  And based upon the answers to those types of
 6    questions, again, we add up points and we -- those
 7    points would place you in one of six criminal history
 8    categories.  Do you understand that?
 9             THE DEFENDANT:  Yes, I do.
10             THE COURT:  And then literally there is a
11    chart in the guidelines, we read down your offense
12    level, across your criminal history score, and we see
13    two numbers which are the months of imprisonment that
14    the sentencing guidelines recommend that I sentence
15    you to.  Do you understand?
16             THE DEFENDANT:  I do.
17             THE COURT:  So I have to calculate the
18    sentencing guidelines.  I have to consider the advice
19    they give me.  I do not have to sentence you
20    consistent with that advice.  I can sentence you
21    either higher or lower than that advice so long as
22    I'm within the statutory range for each of those two
23    crimes.  Do you understand?
24             THE DEFENDANT:  Yes, I do.
25             THE COURT:  Okay.  Have you discussed
```

```
 1   sentencing in general and the sentencing guidelines
 2   in particular with your lawyers?
 3           THE DEFENDANT:  We did.
 4           THE COURT:  All right.  And have you received
 5   advice or a prediction about how you might be
 6   sentenced in this case?
 7           THE DEFENDANT:  Yes, we did.
 8           THE COURT:  Okay.  And do you understand that
 9   whatever your lawyers told you simply reflects their
10   best professional judgment and is not binding on the
11   Court?
12           THE DEFENDANT:  I do.
13           THE COURT:  Very good.  Ms. Levenson, have
14   you had those conversations with Ms. Khan?
15           MS. LEVENSON:  Yes, your Honor.
16           THE COURT:  And are you confident she
17   understands whatever you've told her about a likely
18   sentence is not binding on the Court?
19           MS. LEVENSON:  Yes, your Honor.
20           THE COURT:  Very good.  I understand the
21   parties would like to enter into a written plea
22   agreement?
23           MS. LEVENSON:  Yes, that's correct.
24           THE COURT:  Very good.  All right.  Ms. Khan,
25   a plea agreement is a contract, and it's a contract
```

```
1    between you and the prosecutor.  And you should only

2    enter into that contract if two things are true:

3    one, you want to enter into an agreement with that

4    other party; and, two, the terms of the agreement

5    have been accurately put down in writing in a

6    document that constitutes the contract.  Do you

7    understand?

8                THE DEFENDANT:  I do.

9                THE COURT:  All right.  So we're going to

10   spend a few minutes making sure that those two things

11   are true, that you want to enter into an agreement

12   and that the agreement is accurately set forth.

13               So let's both look at what we have in front

14   of us.  The written plea agreement that I have takes

15   the form of a letter dated today and addressed to

16   your two lawyers, Ms. Levenson and Ms. Meskill, and

17   the letter -- the body of the letter is nine pages.

18   On the ninth page, there is a place for you and your

19   lawyers to sign.

20               Then pages 10 and 11 are entitled

21   "Stipulation of offense conduct and relevant

22   conduct."  Again, there's a place for you to sign on

23   page 11.

24               Page 12 and 13 -- pages 12 and 13 are an

25   appendix with the initials of various victims and the
```

1    amounts of loss.

2          And then pages 14 and 15 are entitled "Rider

3    concerning restitution."

4          Is that the same document that you have in

5    front of you?

6          THE DEFENDANT:  Yes.

7          THE COURT:  And have you read that entire

8    document?

9          THE DEFENDANT:  Yes, I have.

10         THE COURT:  Have you discussed it with your

11   lawyers?

12         THE DEFENDANT:  Yes, I have.

13         THE COURT:  And do you understand what it

14   says?

15         THE DEFENDANT:  Yes, I do.

16         THE COURT:  Very good.  We're going to do two

17   things now to make sure that you completely

18   understand what's in here.

19         First off, I'm going to ask Mr. Chen to

20   summarize the principal provisions of the plea

21   agreement letter.  And as he does that, if he says

22   anything that either surprises you or is different

23   from your understanding, I need you to let me know

24   that.  All right?  Can you do that?

25         THE DEFENDANT:  Yes.

1          THE COURT:  All right.  And the second thing
2    I'm going to ask him to do is to set forth on the
3    record the elements of Count One and Count Two, and I
4    want to make sure you understand what we mean by an
5    element of an offense.
6          An element of an offense is basically a
7    definition of that offense, and it describes what the
8    government would have to prove to a jury beyond a
9    reasonable doubt before you could be convicted if you
10   were to plead not guilty and go to trial.  Do you
11   understand what we mean by "element"?
12         THE DEFENDANT:  I do.
13         THE COURT:  Okay.  So, Mr. Chen, would you
14   please set forth the elements of the two offenses as
15   you go through and describe the significant
16   provisions of the plea agreement letter.
17         MR. CHEN:  Yes, your Honor.
18         As your Honor stated, this 15-page plea
19   agreement letter is the entire agreement for Ms. Khan
20   to plead guilty here today with respect to the
21   criminal charges set forth in this plea agreement.
22         The pleas and the offenses mention Count One,
23   conspiracy to commit mail fraud in violation of Title
24   18, United States Code, Section 1349.  There are two
25   elements that the government would have to prove

beyond a reasonable doubt:  First, that on or about

the dates charged in Count One of the indictment, a

conspiracy existed to commit mail fraud; and, two,

that the defendant knowingly and intentionally became

a member of that conspiracy.

In Count Two, mail fraud has three elements.

On or about the dates charged in Count Two of the

indictment, there was a scheme or artifice to defraud

or to obtain or -- to obtain money or property by

materially false and fraudulent pretenses,

representations or promises as alleged in the

indictment; two, that the defendant knowingly and

willfully participated in the scheme or artifice to

defraud with knowledge of its fraudulent nature and

with specific intent to defraud; and, three, in

execution of that scheme, the defendant used or

caused the use of the mails or a private or

commercial interstate carrier as specified in the

indictment.

THE COURT:  Thank you.  Let's pause there and

make sure that Ms. Khan understands those elements.

Ms. Khan, do you understand what the

government would be required to prove beyond a

reasonable doubt if you were to plead not guilty and

go to trial?

1          THE DEFENDANT:  I do.

2          THE COURT:  All right.  For both these two

3     counts?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Any questions about what they

6     would have to prove?

7          THE DEFENDANT:  No.

8          THE COURT:  All right.  Very good.  Mr. Chen.

9          MR. CHEN:  Thank you, your Honor.

10          Continuing on pages 2 and 3, there is a

11     section entitled "The Penalties" regarding the

12     imprisonment, supervised release, fine, the special

13     assessment and restitution, most of which your Honor

14     has already covered, so I'm not going to spend more

15     time on that.

16          Pages 3 through 6 have a technical section

17     entitled "The Sentencing Guidelines."  And your Honor

18     has already discussed the guidelines in general with

19     Ms. Khan.  Both parties agree in the paragraph

20     entitled "Applicability" that the sentencing

21     guidelines apply and must be calculated in this case

22     but your Honor is not required to follow them in

23     deciding what is a just and appropriate sentence in

24     this case.

25          In the section entitled "Acceptance of

1   Responsibility" on the bottom of page 3 continuing

2   through page 4, both parties agree that Ms. Khan is

3   essentially receiving a credit under the sentencing

4   guidelines, a reduction in her guideline calculation,

5   based on her decision to plead guilty and not to go

6   to trial in this case.

7        "Stipulation" refers to, page 4, the factual

8   stipulation found, I believe, on pages 10, 11 and 12

9   and 13 of this plea agreement letter.

10        Pages 4 through 6 have a technical section

11   entitled "The Guideline Stipulation" in which the

12   parties have agreed, based on their agreement in this

13   plea agreement letter, what the guidelines should be

14   calculated as.  It's too technical and not necessary

15   to go into every detail, but both parties essentially

16   agree that based on the facts in this case, that

17   Ms. Khan is a total offense level 28 with a criminal

18   history category of one resulting in a guideline

19   range of 78 to 97 months of imprisonment, a fine of

20   $25,000 to $250,000, and a period of supervised

21   release of one year to three years.

22        Importantly, in the third-to-last paragraph

23   on page 5, both parties reserve their rights to seek

24   a departure or a nonguideline sentence and the right

25   to object to the opposing party's request for

1    departure or nonguideline sentence.

2        The second-to-last paragraph on page 5, as

3    your Honor told Ms. Khan, the Court is not bound by

4    this agreement or the guideline ranges set forth

5    above and she understands she will not be able to

6    withdraw this guilty plea if your Honor ultimately

7    imposes a sentence outside the ranges set forth in

8    this agreement.

9        On page 6, in the section "Information to the

10   Court," both parties will provide to the United

11   States Probation Office and your Honor relevant

12   information in deciding what is a just sentence here

13   in this case.

14       On pages 6 through 8 are various waivers of

15   rights, most of which your Honor has already

16   canvassed Ms. Khan on.

17       I should just point on the bottom of page 6,

18   the waiver of statute of limitations.  This paragraph

19   basically says that should Ms. Khan's guilty plea

20   here today, if consummated today, is vacated for any

21   reason in the future, the government would not be

22   time-barred from bringing a subsequent prosecution if

23   that conviction were to be vacated somehow in the

24   future.

25       Your Honor has already colloquied Ms. Khan

1  regarding on page 7, the waiver of right to challenge

2  her conviction.

3        Importantly, the second paragraph on page 7,

4  both parties, with respect to their appeal rights

5  regarding sentencing, they reserve their rights to

6  appeal and to oppose each other's appeal of the

7  sentence as permitted by federal statute.

8        Your Honor has already canvassed Ms. Khan on

9  the waiver of challenge to her plea based on

10  immigration consequences.

11        On the bottom of page 7, the acknowledgment

12  of guilt and the voluntariness of the plea.  Ms. Khan

13  is agreeing she is pleading guilty here today freely

14  and voluntarily because she is in fact guilty.

15        Page 8, a section entitled "Scope of the

16  Agreement."  Ms. Khan understands that this agreement

17  is only between her and the United States Attorney's

18  Office for the District of Connecticut and it does

19  not bind any other federal, state or local authority.

20        Your Honor has already canvassed her on the

21  collateral consequences on page 8, the satisfaction

22  of federal criminal liability; breach.  The

23  government and the defendant understand that this

24  guilty plea, according to this plea agreement, if it

25  goes through today, will satisfy her participation in

1   committing mail fraud and conspiring to commit mail

2   fraud which forms the basis of the indictment in this

3   case.

4           I do note there is language regarding a

5   pending state case with the Manchester State's

6   Attorney's Office here in Connecticut where the

7   government is representing, based on its

8   conversations with the State's Attorney's Office,

9   that that case, that state case will be nolled or

10  dismissed with prejudice following the sentencing in

11  this case because that relevant conduct will be

12  included in Appendix A.

13          And, finally, as I started on page 9, no

14  other promises.

15          This 15-page plea agreement letter

16  constitutes the entire agreement for Ms. Khan to

17  plead with the United States Attorney's Office for

18  the District of Connecticut with respect to the

19  indictment in this case.

20          Thank you, your Honor.

21          THE COURT:  Thank you.

22          Ms. Levenson, anything to add to that

23  summary?

24          MS. LEVENSON:  No, your Honor.

25          THE COURT:  Very good.  Ms. Khan, did you

1   understand everything Mr. Chen said when describing

2   the plea agreement letter?

3           THE DEFENDANT:  Yes, I did.

4           THE COURT:  And is his description an

5   accurate summary of your understanding of that

6   document?  Do you agree with what he said?

7           THE DEFENDANT:  Yes, I do.

8           THE COURT:  Okay.  I want to go over a couple

9   things just to make sure you understand them fully.

10  All right?  And the first is on page 5.  There is a

11  fairly complicated calculation of your offense level

12  in this case, and levels -- I'm not going to go into

13  the details, but there are a number of levels added

14  for the following reasons:  that the loss was between

15  250 and 550,000 dollars; that the offense resulted in

16  substantial financial hardship to 25 or more victims;

17  that you knew or should have known that the victims

18  were vulnerable victims; and that the offense

19  involved a large number of vulnerable victims; and

20  that you abused a position of trust in a manner that

21  significantly facilitated the commission for

22  concealment of the offense.

23          I mention those only so that if you think

24  that's not accurate, you can let me know now.

25          Do you agree that those enhancements should

1    apply?

2            THE DEFENDANT:  Yes, I do.

3            THE COURT:  Okay.  And after subtractions for

4    acceptance of responsibility, you would be at a

5    total offense -- if the parties' calculations are

6    correct, and let me make sure you understand, I'll

7    have to calculate the guidelines myself.  I may come

8    out differently than they have.  Do you understand

9    that?

10           THE DEFENDANT:  I do.

11           THE COURT:  So I'm not bound by this

12   agreement.  But assuming the parties are right, they

13   suggest that you'll have a total offense level of 28,

14   a criminal history category of one and that your

15   likely guideline range will be 78 to 97 months in

16   prison, a fine of between 25,000 and 250,000 dollars,

17   supervised release of between one and three years in

18   addition to special assessment and restitution.

19           So I want to make sure you have a sense of

20   how the guidelines may well be calculated in your

21   case.  Do you understand that?

22           THE DEFENDANT:  I do.

23           THE COURT:  Okay.  The other point that I

24   wanted to make sure you understand fully is found on

25   pages 10, 11, 12 and 13.  On page 10, there is a

1    heading "Stipulation of Offense Conduct and Relevant

2    Conduct," and the word "stipulation" simply means

3    agreement.  So if you sign page 11, you're agreeing

4    the factual statements set forth in pages 10 and 11

5    and the identification of the victims and their loss

6    amounts on pages 12 and 13 are true and accurate.

7            MS. LEVENSON:  Just a moment, your Honor.

8            THE COURT:  Yes.

9            MS. LEVENSON:  Thank you, your Honor.  We're

10   prepared to proceed.

11           THE COURT:  Very good.  So, Ms. Khan, did you

12   understand what I just said about if you sign this,

13   you're agreeing that the factual statements are true

14   and accurate?

15           THE DEFENDANT:  Yes, I do.

16           THE COURT:  Are those statements true and

17   accurate?

18           THE DEFENDANT:  Yes, they are.

19           THE COURT:  So you've read and you agree with

20   the statements on pages 10 through 13?

21           THE DEFENDANT:  I did.

22           THE COURT:  Okay.  All right.  Is this the

23   entire agreement you've reached with the government

24   concerning your decision to plead guilty today?

25           THE DEFENDANT:  Yes.

1          THE COURT:  All right.  Has anybody made any

2    promises or representations to you that are not set

3    forth in this document?

4          THE DEFENDANT:  No.

5          THE COURT:  Has anybody tried to force you or

6    coerce you in any way into signing this document?

7          THE DEFENDANT:  No.

8          THE COURT:  Has anybody tried to force you or

9    coerce you in any way into pleading guilty today?

10         THE DEFENDANT:  No.

11         THE COURT:  Whose decision is it to plead

12   guilty?

13         THE DEFENDANT:  Myself.

14         THE COURT:  And have you decided to plead

15   guilty because you committed the crimes charged in

16   Counts One and Two of the indictment?

17         THE DEFENDANT:  Yes, I have.

18         THE COURT:  All right.  Ms. Khan, if the

19   written plea agreement accurately sets forth the

20   terms of your voluntary agreement with the

21   government, this would be a good time to sign it.

22         MS. LEVENSON:  Your Honor, should we go ahead

23   and sign the stipulation now as well?

24         THE COURT:  Yes, please.

25         MS. LEVENSON:  We've all signed, your Honor.

```
 1            THE COURT:  Very well.  Would you hand it up,
 2    please.
 3            MS. LEVENSON:  Yes.
 4            THE COURT:  The plea agreement and
 5    stipulation have been fully executed and will be
 6    filed with the court.
 7            Ms. Khan, the next thing we're going to do is
 8    turn to Mr. Chen again, and I'm going to ask him to
 9    summarize how the government believes it could prove
10    your guilt beyond a reasonable doubt on each of these
11    two charges should you plead not guilty and go to
12    trial.  In sum, he is going to describe why the
13    government believes that you're guilty.  Please
14    listen carefully.  If you disagree with anything that
15    he says that you did, I need to understand that.  All
16    right?
17            THE DEFENDANT:  Yes.
18            THE COURT:  Thank you.
19            MR. CHEN:  Thank you, your Honor.
20            Should this matter proceed to trial, the
21    government would call, among other witnesses, law
22    enforcement witnesses, the victims who were defrauded
23    by Ms. Khan as well as the introduction of exhibits,
24    including documentary evidence from Citizenship and
25    Immigration Services, from the federal immigration
```

1  records, as well as receipts and other documents that

2  were executed or signed by Ms. Khan or Babar Khan.

3  And these documents, this testimony would prove

4  beyond a reasonable doubt that Ms. Khan, along with

5  Mr. Babar Khan, formed an agreement using two

6  entities, one known as JLLAS Corp, one known as

7  EIMAAN LLC, to solicit and provide purported

8  immigration services to individuals seeking some type

9  of immigration benefit, status or relief.  They

10  provided this purported service, took their money

11  without, in general, providing the reciprocal

12  services provided.

13          As discussed in the stipulation of offense

14  conduct, there was circumstances where individuals

15  that were not eligible for relief but they actually

16  took money and filed documents on their behalf, even

17  though that relief was not warranted.  These

18  documents were sent to Citizenship and Immigration

19  Services by mail.  They were sent through the United

20  States mail as verified by the records kept by

21  Citizenship and Immigration Services.

22          As set forth in the stipulation of offense

23  conduct, most of these clients of theirs did not

24  speak English, were not very well educated and

25  susceptible to being told to give their money and to

1  provide this type of remuneration for these benefits

2  that they wanted.  Most of these individuals worked

3  in manual labor jobs that were not highly paying.

4        With respect to Count Two, there is a charge

5  in the indictment with respect to September 4, 2015.

6  It relates to an individual whose initials are J.O.P.

7  He had submitted through the Khans a DACA

8  application, a deferred action for childhood

9  arrivals.  Ms. Khan created a false employment

10  verification letter on behalf of an individual named

11  Michael Ciardullo of Eagle Tissue, LLC in South

12  Windsor.  Mr. Ciardullo said he had never created

13  this type of verification letter which was notarized

14  by Ms. Khan in this case.

15        So with respect to this case, the evidence

16  and the stipulation of offense conduct and relevant

17  conduct which has been agreed to by both parties, the

18  government respectfully submits it could prove all

19  elements of Count One and Count Two beyond a

20  reasonable doubt.

21        Thank you, your Honor.

22        THE COURT:  Thank you.

23        Ms. Khan, was there anything that Mr. Chen

24  said when describing your conduct that you think is

25  inaccurate?

1           THE DEFENDANT:  No.

2           THE COURT:  So is it in fact the case that on

3    or about the date set forth in the indictment, that

4    is, from about May 2015 until January 2018, that

5    there was a conspiracy in existence to commit mail

6    fraud; that is, you agreed with at least one other

7    person?

8           THE DEFENDANT:  Yes.

9           THE COURT:  All right.  And did you knowingly

10   and intentionally become a member of that conspiracy?

11          THE DEFENDANT:  Yes, I did.

12          THE COURT:  Okay.  Then with respect to Count

13   Two, was there a scheme or a plan to obtain money and

14   property by false representations?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Did you knowingly and willfully

17   participate in that plan?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And in the furtherance of that

20   plan, that the mails, United States mails or private

21   carriers, were used to send documents; is that right?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Any further inquiry needed?

24          MR. CHEN:  No, your Honor.  Thank you.

25          THE COURT:  All right.  Ms. Khan, it's now

1    time to take your plea.  And we can read Counts One

2    and Count Two out loud to you, or you can waive that

3    reading if you would prefer.

4              THE DEFENDANT:  I waive it.

5              THE COURT:  Very good.  I would ask the

6    courtroom deputy, please, to put Ms. Khan to plea.

7              THE CLERK:  In the case of *United States of*

8    *America v. Khatija Khan*, Criminal Number

9    3:19-cr-314-SRU, as to Count One of the indictment

10   charging you with a violation of Title 18, United

11   States Code, Section 1349, what is your plea?

12             THE DEFENDANT:  Guilty.

13             THE CLERK:  As to Count Two of the indictment

14   charging you with a violation of Title 18, United

15   States Code, Section 1341, what is your plea?

16             THE DEFENDANT:  Guilty.

17             THE CLERK:  Your Honor, the defendant pleads

18   guilty to Counts One and Two of the indictment.

19             THE COURT:  Thank you.  On the basis of the

20   written plea agreement, the stipulation of offense

21   conduct attached to that agreement and the statements

22   made under oath in open court by Ms. Khan, it's the

23   finding of the Court in the case of *United States v.*

24   *Khatija Khan* that Ms. Khan is fully competent and

25   capable of entering informed pleas, that she is aware

of the nature of the charges and the consequences of

the pleas, and that the pleas of guilty are knowing

and voluntary pleas supported by an independent basis

in fact satisfying each of the essential elements of

the offenses.

        The pleas to Count One and Two of the

indictment are therefore accepted, and Ms. Khan is

now adjudged guilty of those offenses.  Findings of

guilty shall enter and this case is referred to the

U.S. Probation Office for a presentence

investigation.

        Ms. Khan, feel free to be seated.

I want to talk to you now about what's going to

happen next in your case, and that is that you and

most likely your family and friends are going to be

interviewed by a U.S. probation officer.  And I want

to make sure you understand a few things about that

process.

        First off, the probation officers work for

the Court which means for me and not for the

prosecutor.  And the purpose of those interviews is

to allow the probation officer to prepare a

comprehensive report called a presentence report or

PSR.  The PSR is the single-most important document

I'm going to rely upon at the time of your

1    sentencing.  It's going to tell me about you, your

2    background, the nature and circumstances of these

3    offenses and any other information that might be

4    helpful in deciding how to sentence you.  So it's

5    generally in your interest if you and your family and

6    friends provide the information requested by the

7    probation officer.

8            MS. MESKILL:  Just give us one moment, Judge.

9    I'm sorry.

10           THE COURT:  It's all right.

11           MS. LEVENSON:  We're ready.  Thank you.

12           THE COURT:  All right.  Ms. Khan, do you

13   understand everything I just said?

14           THE DEFENDANT:  Yes, I do.

15           THE COURT:  Okay.  I do need to warn you that

16   whatever you tell the probation officer could be used

17   against you at your sentencing.  Do you understand

18   that?

19           THE DEFENDANT:  Yes, I do.

20           THE COURT:  And I want to remind you that you

21   have the right to counsel at every stage of your case

22   which means you have the right to have counsel

23   present during your interview with the probation

24   officer.  Do you understand that?

25           THE DEFENDANT:  Yes, I do.

1          THE COURT:  All right.  And you can turn to

2    your lawyers with questions or concerns before

3    deciding what, if anything, you want to tell the

4    probation officer.  Do you understand?

5          THE DEFENDANT:  I do.

6          THE COURT:  Very good.  Let's set the

7    following schedule:  Ms. Khan should appear for

8    sentencing at 11 a.m. on February 11, 2022, here in

9    Courtroom 1 in Bridgeport.

10          The presentence report must be disclosed

11    to -- will be disclosed by January 3rd, objections

12    submitted by January 14th and the revised presentence

13    report disclosed to counsel and the Court by January

14    24th.

15          Sentencing memoranda should be filed seven

16    days in advance by the defense and four days in

17    advance by the government.

18          Any questions or concerns about that

19    schedule?

20          MR. CHEN:  No, your Honor.

21          MS. LEVENSON:  No, your Honor.

22          THE COURT:  Very good.  Have counsel

23    discussed the question of release pending sentencing?

24          MS. LEVENSON:  Yes, your Honor.  We have

25    discussed that with the government.  We would request

1    that Ms. Khan be permitted to remain released on the

2    current bond conditions.  We've had a chance to

3    discuss that with the government, I believe they're

4    in agreement, and also with the probation office who

5    are also in agreement and who submitted a status

6    report in advance of today.

7           MR. CHEN:  Your Honor, the government agrees

8    with sister counsel's representations with one

9    caveat:  Should Ms. Khan attempt to solicit or

10   attempt to defraud another client during the pendency

11   from now until sentencing, the government will move

12   to remand.  But the government is agreeing for her to

13   be released pending sentencing.

14          THE COURT:  Very good.  I'll grant the

15   motion.

16          Ms. Khan, you're going to be released on the

17   same conditions that you've been under up until

18   today, so you need to make sure you understand and

19   comply with all those conditions.  Do you understand?

20          THE DEFENDANT:  Yes, I do.

21          THE COURT:  All right.  And let me just be

22   completely frank.  It would be very foolish for you

23   to do anything illegal between now and your

24   sentencing because I'll take that into account at the

25   time of your sentencing, and as Mr. Chen just

1    indicated, it could result in your immediate arrest.

2    Do you understand that?

3              THE DEFENDANT:  Yes, I to.

4              THE COURT:  All right.  Very good.  Is there

5    anything else to take up today?

6              MR. CHEN:  I just wanted to note for the

7    record, your Honor, since there are a number of

8    victims in this case, the government has discharged

9    its duty under the Victim Witness Rights Act and they

10   have been notified, and I expect a good number of

11   them may appear at sentencing and a good number of

12   them will submit impact statements.

13             THE COURT:  Very good.  Thank you.

14             MS. LEVENSON:  Nothing else from the defense,

15   your Honor.  Thank you.

16             THE COURT:  All right.  Thank you.  We'll

17   stand in recess.

18             (Proceedings adjourned, 2:16 p.m.)

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3      RE: UNITED STATES OF AMERICA v. KHATIJA KHAN
                No. 3:19-cr-00314-SRU-2

4

5              I hereby certify that the within and

6      foregoing is a true and accurate transcript taken in

7      the aforementioned matter to the best of my skill and

8      ability.

9

10             /s/ Melissa J. Cianciullo _____

11         MELISSA J. CIANCIULLO, RDR, CRR, CRC
                  Official Court Reporter
12             United States District Court
                  915 Lafayette Boulevard
13                Bridgeport, CT 06604
                    (203) 606-1794

14

15

16

17

18

19

20

21

22

23

24

25