```
 1              UNITED STATES DISTRICT COURT
                 DISTRICT OF CONNECTICUT
 2

 3    _____ )
      UNITED STATES OF AMERICA,       ) No. 3:19-cr-00314-SRU-2
 4                                    )
                       Plaintiff,     ) September 1, 2022
 5    v.                              )
                                      ) 2:01 p.m.
 6    KHATIJA KHAN,                   )
                                      ) 915 Lafayette Boulevard
 7                     Defendant.     ) Bridgeport, Connecticut
      _____ )
 8

 9                    SENTENCING HEARING

10    B E F O R E:

11          THE HONORABLE STEFAN R. UNDERHILL, U.S.D.J.

12

      A P P E A R A N C E S:
13

      FOR THE GOVERNMENT:
14
           OFFICE OF THE UNITED STATES ATTORNEY
15              1000 Lafayette Boulevard, 10th Floor
                Bridgeport, CT 06604
16              (203) 696-3000
                E-mail:  harold.chen@usdoj.gov
17         BY:  HAROLD H. CHEN, AUSA

18
      FOR THE DEFENDANT:
19
           OFFICE OF THE FEDERAL DEFENDER
20              265 Church Street, Suite 702
                New Haven, CT 06510
21              (203) 498-4200
                E-mail:  carly_levenson@fd.org
22         BY:  CARLY LEVENSON, ESQ.
                ASHLEY MESKILL, ESQ.
23

24              Official Court Reporter:
                Melissa J. Cianciullo, RDR, CRR, CRC
25              (203) 606-1794
```

```
 1              (Call to Order, 2:01 p.m.)
 2         THE COURT:  Good afternoon.  We're here for
 3    sentencing in the matter of United States v. Khatija
 4    Khan.
 5         Could I have appearances, please.
 6         MR. CHEN:  AUSA Hal Chen for defense, your
 7    Honor.  I'm joined here at counsel table with Special
 8    Agent Joel Barry of Homeland Security Investigations.
 9    I'd also like to recognize from my office Victim
10    Witness Coordinator Ines Cenatiempo who is in the
11    gallery.
12         THE COURT:  Very good.
13         MR. CHEN:  Thank you, your Honor.
14         MS. LEVENSON:  Good afternoon, your Honor.
15    Carly Levenson from the Federal Defender's Office on
16    behalf of Khatija Khan.  With me at counsel table is
17    Ms. Kahn and also Jennifer Mellon, investigator from
18    my office.
19         THE COURT:  Very good.  Thank you.
20         And Lauren Harte and intern Evan Castro are
21    also with us in court today from the U.S. Probation
22    Office.
23         On November 19th of 2021, Ms. Kahn appeared
24    before me and entered a guilty plea to Count One of
25    an indictment charging her with conspiracy to commit
```

1    mail fraud in violation of 18 U.S.C. Section 1349, as

2    well as Count Two of that indictment charging her

3    with mail fraud in violation of 18 U.S.C. Section

4    1341.

5        A presentence report was thereafter prepared

6    for the Court by the U.S. Probation Office.  The

7    initial report and first addendum are both dated

8    April 27, '22, and a second addendum is dated August

9    23 of '22.  I have reviewed the presentence report

10   and both addenda to that report.

11       In addition, in preparation for sentencing

12   today, I've reviewed the defendant's memorandum in

13   aid of sentencing as well as all of the attachments

14   thereto and the government's memorandum in aid of

15   sentencing as well as a series of victim impact

16   statements.

17       Ms. Levenson, let me confirm that you and

18   Ms. Kahn have had a chance to review the presentence

19   report and the addenda to that report.

20       MS. LEVENSON:  We have, your Honor.

21       THE COURT:  Do you have any objections to any

22   of the factual statements that are set forth there?

23       MS. LEVENSON:  No, your Honor.

24       THE COURT:  Very good.

25       Mr. Chen, has the government had the same

1    opportunity?

2         MR. CHEN:  The government has, your Honor.

3         THE COURT:  Do you have any objections to any

4    of the factual statements?

5         MR. CHEN:  No, your Honor.

6         THE COURT:  Very good.  I'm going to adopt

7    the factual statements of the presentence report as

8    the findings of fact of the Court in this case.  I'm

9    also going to accept the plea agreement that was

10   signed and filed on November 19th of 2021, being

11   satisfied that it adequately reflects the seriousness

12   of the actual offense behavior and that accepting it

13   will not undermine the purposes of sentencing.

14        Ms. Kahn today faces the following maximum

15   sentence:  on Count One, up to 20 years of

16   imprisonment; on Count Two, up to 20 years of

17   imprisonment.  On both Counts One and Two, up to

18   three years of supervised release, those terms to run

19   concurrently; a fine of up to $250,000 on each count;

20   restitution in an approximate amount of $326,212; and

21   a total of $200 special assessments on the two counts

22   of conviction.

23        Let me hear from either counsel if there is

24   any reason why the statement of the maximum penalties

25   is inaccurate.

1            MR. CHEN:  No, your Honor.

2            MS. LEVENSON:  No, your Honor.

3            THE COURT:  Very good.  I believe that the

4    sentencing guidelines had been correctly calculated

5    in the presentence report.  We begin with a base

6    offense level of 7.  Twelve levels are added for the

7    amount of the loss.  Six levels are added because the

8    offense resulted in substantial financial hardship to

9    over 25 victims.  Two levels are added because the

10   defendant knew or should have known the victims were

11   vulnerable.  Two levels are added because the offense

12   involved a large number of vulnerable victims, and

13   two levels are added because Ms. Kahn made false

14   representations that she was an attorney, thus

15   triggering the abuse of trust provision of 3B1.3.

16   That gives us an adjusted offense level of 31.

17            Is the government making a motion under

18   3E1.1(b)?

19            MR. CHEN:  The government so moves, your

20   Honor.

21            THE COURT:  That motion is granted.

22            Three levels are subtracted for acceptance of

23   responsibility which gives us a total offense level

24   of 28.  Ms. Kahn is in Criminal History Category 1,

25   and the resulting sentencing guideline range is 78 to

1   97 months of imprisonment, one to three years of

2   supervised release, a fine of between 25,000 and

3   250,000 dollars, restitution in the amount previously

4   stated and two $100 special assessments.

5          Is there any objection to that calculation of

6   the sentencing guidelines or the statement of the

7   resulting sentencing guideline range?

8          MR. CHEN:  None for the government, your

9   Honor.

10         MS. LEVENSON:  No, your Honor.

11         THE COURT:  Good.  Mr. Chen, are there any

12  victims who wish to be heard orally during this

13  hearing?

14         MR. CHEN:  Yes, your Honor, I believe there

15  are either one or two.

16         THE COURT:  Very good.  This would be a good

17  time for them to . . .

18         MR. CHEN:  Okay.

19         R.P.:  Good afternoon, your Honor.

20         THE COURT:  Good afternoon.

21         R.P.:  I'm here to say something about my

22  feelings relating about Khatija Khan and her husband,

23  because basically they made me feel that I was coming

24  to a family.  And I was looking for -- continue with

25  my documents to have my residency, and they made me

1    feel like a family.

2         But after, I didn't know what happened, after

3    two years.  And then everything was online about the

4    fraud that she was doing.  So I called Ines and said,

5    "I need some help," because basically she's preparing

6    all my papers.  She said that was my attorney at that

7    time and nothing was done.

8         Original papers was given to her.  My mom was

9    very worried because she basically told me that if I

10   don't do what she say, she can lose her resident too.

11        And then at that time nothing has been done

12   by my side.  A lot of depression.

13        I do have my son that is eleven years and a

14   half.  He knows about the situation.  But my worries

15   is in some case in the future, what is going to

16   happen with him?  This is his country.  This is not

17   my country.  But what is going to happen with him?

18   He doesn't speak Spanish, so it's going to be hard.

19   In some case I have to move back to my country which

20   is something I don't want.

21        So thank you for taking the time, and

22   basically do what you have to do.  But I feel really,

23   really, really sad because nothing has been done and

24   the way that they've been lying to me asking for

25   money, cash, checks.  Conversations, like -- I was

1    like I found a good attorney at this time that they

2    can resolve my issue in this country.  But

3    unfortunately, nothing happened after that.  And this

4    is -- I'm disappointed.  I'm not nobody to come in

5    and judge her, but basically I'm looking for

6    something.  I'm looking for help to see what I --

7    what anybody can do for me because my process is

8    halfway.  Now it's frozen.  I cannot continue because

9    of that issue.

10           And that's all I have to say.

11           THE COURT:  Thank you for coming.

12           Could we just for the record get your

13   initials?

14           R.P.:  Yes, R.P.

15           THE COURT:  R.B.?

16           R.P.:  R.P., as in Peter.

17           THE COURT:  Thank you so much.

18           H.S.:  Good afternoon, your Honor.

19           THE COURT:  Good afternoon.

20           H.S.:  Sir, I'm one of the victims from them.

21   And what happened was I was a student when I came in

22   2015 here, and they got to know me from -- through a

23   person I got to know about them.  And I think you

24   know, obviously, the story what happened with us, but

25   I just want to let you know the things that happened

1    after.

2          So after they conned me, I was working for

3    their uncle and then they told me that they're going

4    to do my papers, they're going to get me a work

5    permit over here so I can work.  But they just conned

6    me and took all my money.  And I was just working

7    there and getting a lot of money and I was giving it

8    to them.  And what happened is that when they did it,

9    I was -- I was in a shock too because they were

10   considering us as a family.  "Okay, you know, you're

11   like one of the family members, we'll help you."  But

12   they never did.

13         So because of them, now I'm just stuck in --

14   stuck over here.  I have everything, all the papers

15   that I have from my country and from this country,

16   they're all expired.  I can't even drive, my driver's

17   license is expired.  I cannot renew it unless and

18   until I have a status.

19         Then my passport, my Indian passport is about

20   to be expired too on September 9th and I cannot even

21   renew that either without a status.

22         And I cannot even visit my mom.  I'm the only

23   son and I really want to go but I cannot go right

24   now.

25         And now my attorney have applied a 131

1    document for travel for me, but the USA is taking so

2    long.  So right now I'm just sitting duck.  I cannot

3    even do anything about it.  I'm taking favors from my

4    friends and my family to survive here.

5          And as soon as I got to know that they are

6    doing, that I saw on the news that they got -- they

7    had been -- somebody got to know that they did

8    something bad.  And I just stopped myself, I was

9    about to leave the United States at this time, but I

10   just stayed because I really want to get this card.

11   I don't know how they did it.  Like they should have

12   -- they have kids too.  They should understand.  It's

13   from 2021 to -- sorry, 2018 to now, I'm just

14   helpless.  I can't do nothing about it.  So -- and I

15   just have to wait for the USA to do something, and

16   that's the only thing I can do.  And apart from that,

17   that's it.

18          THE COURT:  Thank you, sir.  What are your

19   initials?

20          H.S.:  H.S.

21          THE COURT:  H.S.

22          H.S.:  Thank you.

23          MR. CHEN:  That's it, your Honor.

24          THE COURT:  Very good.  Thank you.

25          Ms. Levenson, let me turn to you with

1    whatever comments you'd like to make about an

2    appropriate sentence in the case.

3         Ms. Kahn, I'll hear from you if you wish to

4    make a statement.  You're not required to say

5    anything, but I would be interested in hearing

6    whatever you choose to say.  And when the two of you

7    are done, I'll hear from Ms. Kahn.

8         MS. LEVENSON:  Thank you, your Honor.

9         The government's memorandum called the

10   offense conduct in this case reprehensible.  And

11   Ms. Kahn agrees.  It's been a long road for her to

12   come to terms with and grapple with the harm that she

13   caused, and she stands before the Court today deeply

14   ashamed of and remorseful for her actions.

15        The government points out the offense caused

16   great harm to the victims, financial harm, emotional

17   distress, and we heard the same from them just now,

18   from a couple of them of many.  And, again, Ms. Kahn

19   agrees.

20        We think it's clear from our memorandum that

21   she has no intention here at sentencing of minimizing

22   her offense conduct, downplaying her role or blaming

23   others for her actions.  She is here, first and

24   foremost, to take responsibility and to apologize.

25        Our sentencing memorandum also set forth a

1    great deal of Ms. Kahn's personal history.  Much of

2    that was submitted under seal because of the private

3    nature of the information contained in it, and we

4    don't intend to go into that content in open court

5    for the same reasons that we sought sealing.

6            The government expressed empathy for

7    Ms. Kahn's traumatic history but argued that personal

8    trauma history her does not excuse or justify her

9    actions.  And, again, we agree.  Ms. Kahn agrees.  We

10   aren't seeking to excuse or to justify.

11           However, the Court can and should and must

12   consider Ms. Kahn's personal history and her

13   characteristics.  And beyond that, we believe that

14   her history helps provide some insight into and

15   context for the offense.  It helps somewhat to

16   explain why Khatija was so incredibly desperate to

17   come across as someone worthy of respect and love and

18   to occupy and live out what was essentially a fiction

19   detached from reality where she was a breadwinner,

20   she was successful, she was beneficent.

21           While we don't have any technical objection

22   to the guidelines calculation in this case, your

23   Honor, we do believe that the guidelines are

24   staggering, especially for a first offender in a

25   nonviolent case who has pled guilty.  And, of course,

1    the parsimony clause must guide the Court in this

2    case, as in every case, in that the sentence must be

3    sufficient but not greater than necessary to serve

4    the purposes of sentencing.  We believe that a

5    sentence significantly below the guidelines in this

6    case can accomplish all of the purposes of

7    sentencing, including reflecting the seriousness of

8    this very serious offense, given the extreme impact

9    of any time in prison in these circumstances and also

10    given the lifelong collateral consequences of a

11    felony conviction, of the publicity associated with

12    this case and the lifelong impact of the restitution

13    obligation that will be imposed in this case.

14          Our memo lays out several different bases for

15    a possible downward departure or variance, but I'd

16    like to focus on one of those specifically today, and

17    that's that Ms. Kahn is the mother and primary

18    caretaker and at many times has been the sole

19    caretaker for her two young daughters ages three and

20    13.  She has never been separated from them before.

21    A prison sentence in this case is going to

22    irreparably change these two children's lives, and so

23    I'd like to talk a little bit about time as it

24    relates to children.

25          Time is different for kids.  Children

```
1    experience and perceive time differently, more slowly
2    than adults, and I think although there are
3    neuroscientific explanations for that, I think we're
4    all intuitively familiar with kind of this phenomenon
5    when we think back to our own childhoods.  A school
6    year in grade school, for example, seems to stretch
7    on forever in comparison to nine or ten months of the
8    professional life of an adult.  A month at a summer
9    camp can feel like an entire era of its own.  Two or
10   three years of middle school are their own era as
11   well.  And these two children are going to feel every
12   day, every minute, every second of this separation
13   from their mother.  From the perspective of
14   Ms. Kahn's three-year-old daughter, a three-year
15   prison sentence would be literally her lifetime.
16          Relatedly, time is different for parents of
17   young kids.  The time when your children are young is
18   time you can never, ever get back.  Although time may
19   move slowly to children, from a parents' perspective,
20   children grow and change unbelievably quickly.  The
21   baby is suddenly a toddler who turns into a kid who
22   turns into a teenager who turns into an adult, each
23   phase lasting only a few precious years.
24          A prison sentence means that Ms. Kahn is
25   going to miss numerous critical developments and
```

1   milestones in each of her daughters' lives.  It's a

2   limited time period that she will never be able to

3   recreate again in the future, and that's an

4   incredibly painful reality that she's facing.

5            Of course, many clients who come before the

6   Court have children; however, in my experience, it's

7   not that common for the primary caretaker and mother

8   of two young children to be coming before the Court

9   facing a guidelines range like this, and even rarer

10  still for the children's other parent to be the

11  co-defendant also facing a possible prison sentence.

12           I say all that to ask that the Court consider

13  weighing heavily that Khatija's daughters are going

14  to be punished by this sentence as well.  Despite her

15  faults and despite her actions in this case, Ms. Kahn

16  is a devoted, loving and proud mother, and both she

17  and her daughters will experience this sentence

18  exponentially because of their close bond and the

19  young ages of her children.

20           Of course, it's not lost on her that her

21  actions also put other mothers and children in

22  jeopardy, as was made clear by the first victim who

23  spoke here today.  And I think it -- that irony or

24  that reality makes this all the more painful to face.

25           Ms. Kahn would like to address the Court

directly.  But before I turn it to her, I did want to

address a few more logistical matters.

First of all, I wanted to inform the Court

that Mr. and Ms. Kahn have made an initial

restitution payment today to the clerk's office prior

to this sentencing of $20,000 to be divided equally

among all of Ms. Kahn's victims.  Ms. Kahn will, of

course, continue paying restitution for years to

come, likely for the rest of her life after she's

released from any prison sentence, but this is an

initial gesture of her desire to repay back what she

took.

As for any final restitution order, as I

referenced in our memo, I think that the parties

would benefit from a little bit of additional time to

try to reach an agreement on a final restitution

figure.  We agreed to a figure of $326,212 in the

plea agreement.  It won't be any less of that, of

course.  But the government had obtained some

additional claims and documentation after the plea

leading them to seek a slightly higher restitution

amount, and we'd just like to have a little bit of

additional time to go through that together and see

if we can reach agreement.  So we'd ask the Court, if

possible, to set a date for restitution hearing

1    within 90 days as the statute allows, with the goal

2    of reaching agreement much sooner than that and

3    hopefully not needing to have a hearing at all.

4         We'd also like to request in this case, your

5    Honor, an extended self-surrender period of between

6    90 and 120 days because there are a number of

7    logistical matters for Ms. Kahn to work out before

8    beginning her sentence, most importantly making

9    arrangements for her daughters.  Although this case

10   has been pending for quite some time, it's not been

11   possible to make those arrangements without knowing

12   how much time she's facing, how much time her husband

13   is facing, when each of them will be going in, and

14   whether they're going to be serving overlapping time.

15   They will likely need time to consult a family lawyer

16   and make those arrangements for their children.

17        Relatedly, we're also asking the Court to

18   consider the possibility of imposing staggered

19   sentences for the two parents; however, this really

20   doesn't affect our request in this case, as Ms. Kahn

21   would want to be the one to serve her sentence first.

22   And so as for her sentence, we're simply asking for

23   that self-surrender period of 90 to 120 days.

24        Just one moment, your Honor.

25        Your Honor, Ms. Kahn would like to address

1    the Court.

2         THE COURT:  Very well.  Ms. Kahn.

3         THE DEFENDANT:  First and foremost, I'm

4    greatly sorry for everything that has happened,

5    everything that I've caused to -- the reason of us

6    being here today, especially most importantly to

7    everyone that most of those are not here.  I don't

8    have the words to be able to express how deeply sorry

9    I am for all the pain and suffering that I've caused

10   to each and every one, for their emotional,

11   financial, their -- everything that you possibly as a

12   human can feel.  So that goes without saying.  And I

13   genuinely am really sorry for everything that has

14   happened.

15        It's been a very long process.  I -- during

16   this process, I have -- a lot has happened.  You

17   know, I was born as a Muslim and I was -- I should

18   have known.  Knowing one thing and actually accepting

19   it, that in Koran, it teaches us not to hurt anyone

20   in any shape, form.  And very unfortunately in this

21   worldly life, I got too caught up and too

22   misunderstood that I ended up very unfortunately

23   hurting that Ala ordered us not to hurt the most is

24   another human being in any way.  And because of me,

25   I've hurt many.  Never intended to.  I can never

1    bring that time back.

2        Only -- as -- as heavy of a heart I'm

3    feeling, it's hard to get -- like be able to express.

4    Many know me as to be able to just speak fully and

5    then be able to -- but when you feel the pain of

6    others, you know how heavy your heart gets.

7        I wanted to be able to get acknowledgment of

8    the ones, those were around me.  I wanted to be able

9    to get accepted.  I wanted to be able to -- able to

10   make a difference.  And, unfortunately, that path of

11   making that difference was not the right one.  Very

12   misunderstood, I was.  It has led us to this point.

13       But at the same time, very, very fortunately,

14   very, very fortunately, I am glad that Allah God has

15   put me in this to have me be the person that I am,

16   not the person that I was.  That wasn't who I am.

17   I'm thankful that it has came to an end, that it has

18   brought an end to everything that was happening.  I'm

19   thankful that I'm able to give myself and my

20   daughters or anyone that knows me or knows of me,

21   what has happened to me and what could happen and how

22   to fix that.  I hope the many women who have seen me

23   go through this, they would -- or anyone that has

24   intention to or doing something or -- that they would

25   see me, the suffering that it causes, the pain that

1    it causes, that it brings nothing but bad, that

2    everybody would be able to know that, including

3    myself, that this is -- there is no end to -- it

4    stops.

5            When -- after pleading guilty, when I had

6    long conversations with my daughter, she's 13, she

7    has been going through this with me for quite some

8    time.  And I explained to her -- she used to be with

9    me all the time.  And I explained to her that mom has

10   made mistakes that hurt others and not ever, ever

11   felt that, like I -- admitting to your child that

12   because of you, you have hurt individuals, those are

13   families, that has been the hardest burden.  That has

14   been the hardest thing to do is be able to explain to

15   your child why we're in the situation, why -- that I

16   have lied to people, that I have given them a fake

17   hope, a hope that you wish that it would come true.

18   I have put them in extreme hardship.

19           It has been the most difficult for everyone.

20   And like I said, I cannot bring that time back, but I

21   have -- words are not able to express the feelings

22   that I've had and where I stand today.  I don't wish

23   this upon anyone.  I don't wish anyone to be in pain.

24   I never did and don't mean to.  But I'm extremely

25   sorry for all the pain that I have caused to

1    everyone.  Do -- everything can begin again, but

2    their time that they have lost or the pain that they

3    have suffered, I can't bring that back.  I'm sorry.

4    All I can do is just stand in front of you and then

5    in front of them and be able to apologize for

6    everything that I've caused.  And I find it in -- I

7    hope that they find anywhere, just a little gesture

8    to be able to forgive me.  And I do the same for you

9    that -- it's not about me.  It hasn't been about me.

10   And I'm really -- I -- like I said, I don't have the

11   words to be able to like continue on to be able to

12   say how sorry I am for this.

13         But again, like, I'm -- I've learned the true

14   person that I'm supposed to be or like anyone should

15   be, like anyone that should have been.  I don't want

16   any of my life to be reflected on any -- like

17   especially my -- any woman, any girl or anything.

18   I'm not just -- like Carly mentioned my daughters.

19   But at the same time, the problem -- the heartaches

20   that I have caused, the hardship that I have caused,

21   the problems that I've caused, the -- I wish others,

22   anyone, like I have learned from my mistakes.  I have

23   learned that the difficulty that it has on you and

24   your life, your children, the ones that -- not just

25   me.  My parents have been suffering along.  I didn't

1    just cause them.  I've caused a lot of emotional

2    suffering to my parents as well.  They're sitting

3    behind us today.  No parent wants any child to be in

4    any problem.  Very unfortunately, my wrong mistakes,

5    my wrong actions have caused so many to be in very

6    difficult positions.

7              Thank you.

8              THE COURT:  Thank you.

9              Mr. Chen.

10             MR. CHEN:  Thank you, your Honor.

11             The government sincerely appreciates

12   Ms. Kahn's statement to you because the last five

13   years of evidence show that she committed a crime

14   repeatedly lacking humanity, lacking empathy, lacking

15   decency, and she did it to people like the two people

16   that you heard from who were just like her at one

17   point.  They were people who came to the United

18   States, were trying to survive in a strange land, and

19   the last thing they needed was someone to take

20   advantage of them, to see them as an easy mark, to

21   take their money away.

22             But that's exactly what Ms. Kahn chose to do

23   to 40-plus victims.  And each victim made, as a

24   general rule, between three to five payments.  Some

25   made less, some made more.  But those are more than a

1    hundred illegal acts, illegal lies leading to the

2    cheating of money from people who couldn't afford to

3    have money taken away from them.  As the government's

4    papers have indicated, most of these folks were

5    trying to survivor with menial jobs.  Five, 6,000

6    dollars was a huge sum of money to some of these

7    folks, their life savings.  And Ms. Kahn by her

8    actions just took that money away from them, giving

9    them false hope, empty promises that by giving her

10   money, she would take action that would somehow get

11   them work papers, that would get them green cards and

12   provide a pathway to citizenship.

13          I think the concern is that, the disturbing

14   ease that Ms. Kahn had in doing this.  I think most

15   people would be chastened, would be upset by the

16   repetition of this criminal act.  But in this case,

17   she wasn't.  And that gives the government great

18   concern, particularly from a perspective of specific

19   deterrence.

20          As the victims that were recounted in the

21   PSR, some were depressed, a few became suicidal.

22   They lost the time for their immigration cases as

23   well.  So the costs were really tremendous.

24          And I understand as a parent the suffering

25   that Ms. Kahn is going through emotionally with the

1    idea of being separated from her children and that is

2    extremely painful.  And the children, the government

3    will concede, will suffer as well.  But for every

4    serious crime, there must be a serious consequence.

5    And I think that's the unfortunate result that we

6    have here.

7         I think I said this was a cynical crime, and

8    this crime in many ways was the perfect crime for a

9    fraud, fraudster or con artist.  These people were

10   desperate.  They were predisposed by their lack of

11   immigration status to not want to speak to law

12   enforcement, to stay off the grid, and the

13   underlining MO of the crime was, You're not happy

14   with my service that I provided you when I have told

15   you that I'm a lawyer when I'm not, well, then go

16   figure it out, go to the police if you dare.

17        And I think to the extent there is a silver

18   lining in this case, it's the fact that so many

19   people that Ms. Kahn hoped were going to stay off the

20   grid believed in the promise of American law,

21   believed in the maxim of equal justice under law,

22   equal protection under the law; that even though they

23   had so much to lose, they came forward and they spoke

24   to Special Agent Barry, they spoke to Victim Witness

25   Coordinator Cenatiempo from our office because they

1    believed that America was better and that America

2    would protect them even though they didn't have

3    status to be a citizen or a status to be a permanent

4    resident.

5          The defense brief is among the most elegant

6    briefs I've seen as an AUSA, and I appreciate all the

7    effort that sister counsels have put in this case.

8    But I think the key -- one of the key issues for the

9    government is that the motive for a financial crime

10   is usually the same across the board:  Somebody wants

11   more money than they can legally obtain, they want to

12   get that money somehow and they think they can get

13   away with it.  And I think that's exactly what

14   happened here.  And because of that, I think Ms. Kahn

15   needs to get the appropriate consequence from the

16   Court's sentence.

17          I think your Honor's sentence will be very

18   important in the respect that it will signal to the

19   public that the victims here, even those without

20   status, they matter.  They may not be permanent

21   residents.  They may be in the future subject to some

22   type of adverse immigration action.  But as long as

23   they're residents here in the United States in the

24   District of Connecticut, they are protected under the

25   law.  Reasonable minds can disagree about the merits

1    of immigration and immigration policy, but no one

2    deserves to be a victim of crime, and I believe your

3    Honor's sentence will communicate to the general

4    public that that matters.

5           And unless your Honor has further questions,

6    I'll rest on my papers.

7           THE COURT:  Thank you.

8           MR. CHEN:  Thank you, your Honor.

9           THE COURT:  Well, Ms. Kahn, let me start by

10   saying that this case is a very sad case.  The wake

11   of hurt that follows this crime will remain for a

12   long time.  You and your family are going to hurt.

13   The victims and their families are going to hurt; and

14   what we do today isn't going to take any of that

15   away, frankly.

16          The statutes require that I consider a bunch

17   of factors that are all set forth in 18 U.S.C.

18   Section 3553(a).  Let me just tell you, I have

19   considered all those factors.  What I want to do

20   today is focus on the factors that are most important

21   in my decision about how to sentence you today.

22          Both lawyers acknowledge how serious this

23   crime is, and I want to start there.  I consider this

24   a tremendously serious crime.  It is a crime that

25   hurt many, many people who were not in a position to

1    absorb that hurt.  They were not well off.  They were
2    afraid.  They were desperate.  And your actions have
3    only exacerbated the seriousness and precarity of
4    their situation.
5        We have two brave victims who came forward.
6    You know, illegal immigrants are afraid to come to
7    courthouses.  They're afraid to speak out.  They're
8    afraid to complain.  Whether you knew that and preyed
9    on that, I'm not sure, but that's the effect.  And
10   they are of a class among the most vulnerable people
11   in our society, period.  They have few rights, few
12   opportunities, little money, many problems.
13       You have -- your lawyers have emphasized the
14   difficulties of your separation from your children
15   that imprisonment would bring about, and I
16   acknowledge that and I accept that and I understand
17   that.  Incarceration separates loved ones, but
18   deportation separates loved ones too.
19       And at least in some of the victims' cases,
20   their situation in this country is more precarious
21   than it was before because of what you did.
22   Deadlines were missed.  Paperwork was improperly
23   filed.  Promises were not kept.  And many of these
24   victims simply are not able to recover from that.  So
25   it's serious and it's an impact on the victims, which

I think is one of the more significant measures of
how serious a crime is.  More than the money lost,
it's the impact on the people.

This fraud took place over a long period of
time.  I mean, Mr. Chen said a hundred incidents.  In
terms of years, it was years and years that this went
on.  Every time you had a new so-called client, you
had a choice to make and you made the wrong choice.
So it's serious from that point of view as well.  I
was stunned to hear that after your arrest, it still
continued.  That suggests to me that you didn't get a
wake-up call by being arrested.  So overall, I think
this is a very, very serious crime.

I'm going to just comment, I don't think the
guidelines do it justice, and that's often true in a
financial loss case.  The guidelines in many ways
miss the mark in financial crimes.  It doesn't matter
how many dollars are at issue; it matters from whom
those dollars were extorted or stolen or otherwise
unlawfully obtained.

So I don't take much guidance, frankly, from
the sentencing guidelines here; but instead I'll be
focusing on imposing a nonguideline sentence on the
more accurate measure of the seriousness of those
crime, which is the impact on the victims.

1          This is your first offense.  I'm taking that

2    into account.  I am taking into account all the

3    information that was in the sealed portion of your

4    brief regarding the difficulties you have had in life

5    and the issues that you no doubt are still working

6    through.  And I acknowledge, you've had a difficult

7    life.  But there comes a point where that doesn't --

8    that doesn't justify the wrongfulness here.  I,

9    frankly, don't see a clear link between your

10   difficult background and this crime.  If someone is

11   raised in the inner city and the parents are in

12   prison or drug addicts and they turn to the streets

13   and they become the drug dealers, there is a

14   connection between their background and their crime.

15   But here you had -- you didn't have that type of

16   connection between your background and the

17   wrongfulness of what you did.  You had the ability to

18   make money legitimately.  You're an intelligent

19   woman.  You have some education.  You obviously

20   impressed people as a capable lawyer, although you've

21   never finished college or gone to law school.  You

22   could have gone to an immigration law firm, become a

23   paralegal, gotten a salary, earned respect in that

24   way, earned money in that way, and instead you went a

25   very different direction.  So I just don't see the

1  connection between your difficult life and the

2  wrongfulness of this conduct.

3        So what I'm left with is a very serious crime

4  and the question of how to sentence someone who

5  committed that crime, and yours is not an easy case

6  because you've had a difficult life and because you

7  have family to care for.  I understand that.  But

8  there comes a point below which I can't push the

9  sentence.  So just to be clear, the sentence in every

10  case should be sufficient but not greater than

11  necessary to serve the purposes of sentencing.  And

12  in my view, I look at the guidelines, I start there

13  and I say is a lower sentence sufficient.  If so, I

14  then evaluate that lower sentence and say is that --

15  can that sentence be pushed lower and would that

16  sentence be sufficient.  And through that process I

17  get to a point where I cannot push the sentence any

18  lower because the sentence would not be sufficient.

19  I have done that in your case.  The sentence will be

20  below the guideline range, but it's not going to be

21  as far below the guideline range as I'm sure you and

22  your lawyers would prefer.  And the reason for that

23  is because notwithstanding the excellent briefing in

24  this case, the support that was provided for the

25  various downward departure and nonguideline sentence

1    arguments that were made, there just comes a point

2    where a lower sentence would not be sufficient.

3            So substantially for those reasons, it's my

4    intention to sentence as you follows:

5            To a period of incarceration on Count One of

6    60 months and on Count Two of 60 months, those terms

7    to run concurrently.  I'm going to recommend to the

8    Bureau of Prisons that you be designated to a

9    nonadministrative facility as close to Connecticut as

10   possible, either Danbury or another facility,

11   nonadministrative facility.

12           I will permit self-surrender and will set the

13   date in a moment.

14           Following your release from incarceration,

15   you're going to be on supervised release for a period

16   of three years on Count One and three years on Count

17   Two, those terms to run concurrently.

18           During the period of supervised release, the

19   mandatory conditions of supervised release set forth

20   at Guideline Section 5D1.3(a)(1) that you not commit

21   another federal, state or local offense; (2) that you

22   not unlawfully possess controlled substances.

23           Ms. Harte, I'm going to -- I'm inclined to

24   waive the drug testing requirement.  Do you concur

25   with that?

1      THE PROBATION OFFICER:  I would agree with

2  that, your Honor.

3      THE COURT:  All right.  I'm going to order

4  then that you be required to comply with condition

5  (6) that you make restitution as ordered and that you

6  pay the special assessment imposed; and (8) that you

7  cooperate in the collection of a DNA sample for use

8  by lawful.

9      The standard conditions of supervised release

10  set forth at Guideline Section 5D1.3(c) will also

11  apply.  And as special conditions, I'm going to order

12  the following:

13      You must not incur new credit card charges in

14  an amount greater than $500 or open additional lines

15  of credit without the approval of the probation

16  officer.

17      You must not add any new names to any lines

18  of credit, and you must not be added as a secondary

19  cardholder on another's line of credit.

20      You must provide the probation officer access

21  to any requested financial information and authorize

22  the release of any financial information.  The

23  probation office may share financial information with

24  the U.S. Attorney's Office.

25      You must pay restitution imposed by this

 1    judgment jointly and severally with your co-defendant

 2    Babar Kahn in a lump sum immediately.  If you are

 3    unable to pay the full balance in a lump sum, any

 4    remaining balance is payable at a rate of not less

 5    than $500 per month or 10 percent of your gross

 6    monthly income, whichever is greater.  The monthly

 7    payment schedule may be adjusted based on your

 8    ability to pay as recommended by the probation

 9    officer and approved by the Court.

10         Each of these three special conditions is

11    intended to facilitate the payment and collection, if

12    necessary, of restitution so that the victims can be

13    made whole ideally.

14         And, finally, you must participate in a

15    program recommended by the probation office and

16    approved by the Court for mental health treatment.

17    You must follow the rules and regulations of that

18    program.  The probation officer in consultation with

19    the treatment provider will supervise your

20    participation in the program, and you must pay all or

21    a portion of the cost of that treatment based on your

22    ability to pay as recommended by the probation office

23    and approved by the Court.

24         This obviously is intended to help you help

25    yourself.  There is obviously some indication of

 1  concerns about your mental state, and I want to make

 2  sure that you have the appropriate help for that

 3  condition during the period of your supervised

 4  release.  The probation officer in that respect is

 5  there to help you help yourself.  So if you feel that

 6  you need mental health counseling, treatment or other

 7  services, you should turn to your probation officer

 8  and get the help that you need.

 9       Should you violate any of these conditions of

10  supervised release, you have an additional period of

11  two years of imprisonment hanging over your head; so

12  you need to make sure you understand and comply with

13  each of those conditions.

14       I'm going to waive a fine in your case based

15  upon a determination that you cannot afford a fine

16  within the guideline range, especially in light of

17  the significant restitution obligation.

18       I'm going to order restitution in an amount

19  to be determined after further hearing or agreement.

20  That amount is going to be not less than $326,212.

21  The restitution will be payable to the victims in a

22  manner that is handled by the U.S. Attorney's Office

23  and by the clerk's office.

24       And, finally, I am required to impose

25  mandatory special assessments totaling $200 on the

```
 1    two counts of conviction.
 2             Let me hear from either counsel if there is
 3    any reason why the sentence I just described cannot
 4    lawfully be imposed as the sentence of the Court in
 5    this case.
 6             MR. CHEN:  No, your Honor.
 7             MS. LEVENSON:  No, your Honor.
 8             THE COURT:  Ms. Kahn, the sentence I just
 9    described is imposed as the sentence of the Court in
10    your case.  The judgment will be filed soon and
11    that's going to start the clock running on the time
12    within which you have to file a notice of appeal.
13    You have 14 days from the entry of the judgment
14    within which to file a notice of appeal of your
15    sentence.
16             Do you understand?
17             THE DEFENDANT:  Yes.
18             THE COURT:  If you wish to appeal but cannot
19    afford to do so, you can file a motion to proceed in
20    forma pauperis.  If that motion is granted, the Court
21    will grant the filing fee for your appeal and will
22    appoint a lawyer to handle your appeal at no cost to
23    you.  Do you understand that?
24             THE DEFENDANT:  Yes.
25             THE COURT:  I'm going to suggest a
```

1    self-surrender date of December 14th.  Does that

2    suit?

3              MS. LEVENSON:  Yes, your Honor.

4              THE COURT:  So Ms. Kahn should appear or

5    surrender at the designated Bureau of Prisons

6    facility by noon on Wednesday, December 14, 2022.

7    Failure to do so will be treated as an escape and

8    subjects her to significant potential penalties.

9              I've recommended Danbury or a

10   nonadministrative facility close to Connecticut.

11             Are there any other recommendations that are

12   requested?

13             MS. LEVENSON:  No, your Honor.

14             THE COURT:  Mr. Chen, are there any other

15   matters to take up today?

16             MR. CHEN:  No, your Honor.

17             THE COURT:  Any counts to be dismissed?

18             MR. CHEN:  I don't believe so.

19             THE COURT:  Very good.  All right.

20             Well, let me say to the victims who are

21   present and those who are not present, I hope this

22   begins to put this matter behind you so that you can

23   move on with your lives, and I wish you good luck in

24   all that you face these days.

25             Ms. Kahn, I wish you well as well.  You are a

1  woman who has some very good ability, and I hope that

2  you will refocus and put that ability to use after

3  you're released from prison in a way that we can all

4  be proud of.  And I wish you and your family good

5  luck.

6         THE DEFENDANT:  Thank you.

7         THE COURT:  We'll stand in recess.

8         (Proceedings adjourned, 2:58 p.m.)

9

10         C E R T I F I C A T E

11

12  RE: UNITED STATES OF AMERICA v. KHATIJA KHAN
            No. 3:19-cr-00314-SRU-2

13

14         I hereby certify that the within and

15  foregoing is a true and accurate transcript taken in

16  the aforementioned matter to the best of my skill and

17  ability.

18

19      /s/ Melissa J. Cianciullo _____

20      MELISSA J. CIANCIULLO, RDR, CRR, CRC
            Official Court Reporter
21      United States District Court
            915 Lafayette Boulevard
22         Bridgeport, CT 06604
            (203) 606-1794

23

24

25