UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>KHATIJA KHAN | No. 3:19-cr-314 (SRU) |

### RULING ON MOTION FOR CREDITS AGAINST RESTITUTION

On November 19, 2021, Khatija Khan ("Khan") pled guilty to Conspiracy to Commit Mail Fraud in violation of 18 U.S.C. § 1349 and Mail Fraud in violation of 18 U.S.C. § 1341. Doc. No. 61 at 1-2. Khan admitted to fraudulently representing herself as an immigration attorney in order to defraud immigrant clients. *See generally* Doc. No. 123; Doc. No. 124. On September 1, 2022, I sentenced Khan to two concurrent 60-month terms of imprisonment; two concurrent 3-year terms of supervised release; and restitution, the amount of which was to be agreed upon at a later hearing and which would be no less than $326,212. *See* Doc. No. 119.

On January 2, 2023, the government submitted a memorandum arguing that, in addition to the minimum restitution amount of $326,212, Khan should also be ordered to pay restitution to six additional victims not included in Khan's plea agreement, an amount it calculates to be $40,420.[1] *See* Doc. No. 138; *see also* Doc. No. 145. On January 3, 2023, Khan filed a motion for leave to contest restitution. *See* Doc. No. 140. I held status conference on January 3, 2023, in

---

[1] The government appears to have erred in its calculation of the $40,420 amount in two ways. First, the $40,420 amount includes, by the government's calculation, $14,525 of losses by E.H.M. *See* Doc. No. 145 at 6. However, the government appears to have miscalculated E.H.M.'s losses by excluding a receipt dated August 23, 2018 for $100 that E.H.M. paid to Dr. Memon. *See* Doc. No. 145-3 at 5 (receipt number 492457). The government did include in its calculation all other receipts showing payments from E.H.M. to Dr. Memon, including three other receipts from August 23, 2018. *See* Doc. No. 145 at 6. Second, the government erred in its calculation of the total losses it alleges. *See* Doc. No. 145 at 9 (itemizing the losses by victim and stating a total amount of losses that does not correspond with the itemization). The calculation appears to exclude the $5,500 of alleged losses to J.B.T.V. *See id*. Indeed, adding all six victims' losses together (including the erroneously excluded $100 receipt discussed above) would result in a total of $46,020 of additional victim losses—not $40,420.

which I granted in part and denied in part Khan's motion to contest restitution. Doc. No. 141. Specifically, I denied the motion to the extent that she challenged the minimum $326,212 restitution amount previously agreed upon, and I granted the motion to the extent that Khan intended to contest any additional amount of restitution. *See* Doc. No. 141; Do. No. 144. I held a hearing on restitution on January 11, 2023 and January 31, 2023. *See* Doc. No. 147; Doc. No. 153. In advance of the hearing, Khan filed a motion for credits against restitution, in which she requested "credit against any restitution order for sums that her victims paid which went towards United States [Department] of Homeland Security fees or attorney's fees paid on their behalf." Doc. No. 146 at 1.

For the reasons articulated below, Khan's motion for credits against restitution is **granted in part and denied in part**. Khan shall make restitution to her victims in the total amount of **$367,743.75**.

I.      **Legal Standard**

In a prior Order, I ordered Khan to make restitution to the victims in an amount not less than $326,212, the minimum victim loss amount agreed upon by both parties in Khan's plea agreement. *See* Doc. No. 119 at 2; Doc. No. 61 at 10-15 (plea agreement); Doc. No. 144. Accordingly, the issue that remains contested by the parties is to what extent Khan must pay additional restitution beyond the minimum amount.

The Mandatory Victim Restitution Act (MVRA) governs Khan's restitution obligation. *See* 18 U.S.C. § 3663A(a)(1); *see also* Doc. No. 61 at 3. The statute instructs the court to "order . . . that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate." 18 U.S.C. § 3663A(a)(1). The statute defines a "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which

restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(a)(2).

Restitution under the MVRA must be "based on the victims' actual losses," not the defendant's gains. *United States v. Zangari*, 677 F.3d 86, 92 (2d Cir. 2012). "[T]he MVRA requires only a reasonable approximation of losses supported by a sound methodology." *United States v. Gushlak*, 728 F.3d 184, 196 (2d Cir. 2013). "So long as the basis for reasonable approximation is at hand, difficulties in achieving exact measurements will not preclude a trial court from ordering restitution." *Id*. (quoting *United States v. Savoie*, 985 F.2d 612, 617 (1st Cir. 1993)). "Any dispute as to the proper amount . . . of restitution shall be resolved by the court by the preponderance of the evidence." *Id*. at 195 (citation omitted).

In general, "[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government. [And] [t]he burden of demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents, shall be on the defendant." 18 U.S.C. § 3664(e). As for "other matters," the MVRA "entrusts allocation of the burden of proof to the district court's discretion." *United States v. Smathers*, 879 F.3d 453, 459 (2d Cir. 2018); *see* 18 U.S.C. § 3664(e).

In a previous Order, I assigned to Khan the burden of proving "whether she used certain victims' funds to hire legitimate attorney(s)," because she "has an affirmative goal and presumptive access" to that evidence. *See* Doc. No. 157 (quoting *Smathers*, 879 F.3d at 459). Accordingly, although the government bears the general burden of proving the victims' actual losses, Khan bears the burden of proving she used victims' funds to hire legitimate attorneys.

3

**II.      Discussion**

The government submits that Khan is obligated under the MVRA to pay restitution to six additional victims not identified in the plea agreement. *See* Doc. No. 145. Those victims are F.P.S., J.B.T.V., E.H.M., A.P.T. and A.M.G., L.P.B. and N.B., and E.S. and D.C. *See generally id.* In opposition, Khan argues that amounts she paid "toward agency fees or attorney's fees for [those] victims [should] not be considered 'losses' to the victims" under the MVRA. Doc. No. 146 at 1.

   A.  Payments to Legitimate Attorneys

At the restitution hearing on January 31, 2023, Khan testified that certain of the payments she received from the six additional victims were transferred to legitimate attorneys who, in turn, provided those victims with legitimate services. At the hearing, Khan appeared to struggle to recollect the precise payments she made to attorneys on behalf of particular victims. Khan testified that the following payments from victims were transferred by Khan to legitimate attorneys: Khan's $1,000 check to Attorney Collins on behalf of L.P.B. and N.B., *see* Def's Ex. A; $300 in cash to Attorney Collins on behalf of another victim; $1,500 to Attorney Noyes on J.B.T.V.'s behalf; $2,200 and $1,200 from A.P.T. and A.M.G. to a criminal attorney and family law attorney in New York; and an unspecified additional amount of payments to other attorneys on behalf of her victims.

In the approximately three months since the hearing, Khan has not filed any new documentation supporting her testimony regarding funds paid to attorneys. The only documentation provided by Khan to reinforce her testimony is an exhibit showing Khan's $1,000 check made payable to Attorney Collins. *See* Def's Ex. A. The government's investigation additionally reveals that Khan had paid Attorney Noyes $1,038.25 on E.H.M.'s behalf. *See* Doc.

No. 160 at 3. Because there is documentary evidence that supports her testimony regarding those payments, Khan has met her burden of showing she expended $1,038.25 of E.H.M.'s payments and $1,000 of L.P.B. and N.B.'s payments on legitimate attorneys. Accordingly, I will award Khan credits against restitution for those amounts.

Regarding her other claims for credit against restitution, however, Khan's faltering testimony, in which she could not provide precise accounts of funds paid to attorneys, is the only evidence she provides to support her claims. Khan, therefore, has not met her burden for those claims, and I deny her credit against restitution for those alleged payments.

B.  Other Payments

Khan also requests credit against restitution for victim payments that she expended toward United States Department of Homeland Security ("DHS") fees. *See* Doc. No. 146 at 1. Khan has not submitted any documentation showing payments she made to agencies on behalf of victims. The exhibits submitted by the government, however, show that E.H.M. made two payments that were presumably allocated toward agency fees. E.H.M. gave Khan one cashier's check for $1,225.00 addressed to DHS, and an additional check for $1,225.00 that he did not address but instead gave to Khan to submit to the agency. *See* Doc. No. 145 at 6; Doc. No. 145-3 at 3, 6.

The government's investigation shows that E.H.M.'s family's application for lawful permanent resident status was rejected when E.H.M. was working with Khan. E.H.M. later began working with Attorney Noyes, who successfully reopened his family's immigration cases, and certain of E.H.M.'s family members eventually obtained lawful permanent resident status. When testifying at the hearing on January 11, 2023, E.H.M. did not know whether the agency fee payments he had made through Khan in fact had been submitted to DHS. At the January 31,

5

2023 hearing, however, Khan testified that checks from E.H.M. intended for agency fees were "handed over to Attorney Noyes" so that Noyes could handle E.H.M.'s case. Because Khan referred E.H.M. to Attorney Noyes, and because Attorney Noyes eventually secured lawful permanent resident status for E.H.M., the government has not met its burden of showing that the funds allocated toward agency payments for E.H.M. were part of E.H.M.'s "actual loss[]." *Zangari*, 677 F.3d at 92. Accordingly, I will award Khan credit against restitution to E.H.M. for both payments of $1,225.00, for a total of $2,450.00.

Government exhibits also show that E.S. paid $660 to DHS for an I-131 travel authorization. *See* Doc. No. 145 at 8; Doc. No. 145-6 at 2. The government, however, asserts that "USCIS records disclose that Ms. Khan never filed any immigration paperwork on E.S.'s behalf." Doc. No. 145 at 8. Accordingly, the government has met its burden of showing that those payments were part of E.S.'s actual loss, and I deny Khan credit for those payments.

Finally, Khan also testified at the January 31, 2023 hearing that she gave J.B.T.V. $2,000 of his funds back to him so that he could pay for housing. However, Khan appeared to generally struggle at the hearing to recall payments with specificity, she has not provided documentation supporting the occurrence of such a refund, and the government has provided ample documentary evidence concerning J.B.T.V.'s losses. I therefore conclude that the government has met its evidentiary burden with respect to restitution payments to J.B.T.V., notwithstanding Khan's testimony.

### III.   Conclusion

For the foregoing reasons, Khan's motion for credit against restitution, doc. no. 146, is **granted in part and denied in part**. Khan shall make restitution to the six additional victims as follows: $6,185 to F.P.S.; $5,500 to J.B.T.V.; $11,136.75 to E.H.M.; $7,600 to A.P.T. and

A.M.G.; $6,100 to L.P.B. and N.B.; and $5,010 to E.S. and D.C. The total additional amount of restitution is $41,531.75.

Accordingly, Khan shall make restitution in the total amount of **$367,743.75** to the victims pursuant to the MVRA. *See* 18 U.S.C. § 3663a. The government is **ordered** to file a proposed restitution order consistent with this ruling. A final Restitution Order from the Court will follow.

IT IS SO ORDERED.

Dated at Bridgeport, Connecticut, this 28th day of April 2023.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge